UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WILSON NDURI TINDI,                                 CIVIL NO. 17-3663 (DSD/DTS)

    Petitioner,

v.                                                                    REPORT AND RECOMMENDATION

SECRETARY,
*Department of Homeland Security;*
JEFFERSON SESSIONS,
*Attorney General;*
SCOTT BANIECKE,
*ICE Field Office Director;* and
KURT FREITAG,
*Freeborn County Sheriff,*

    Respondents.

---

Wilson Nduri Tindi, Freeborn County Adult Detention Center, PO Drawer 170, Albert Lea, Minnesota, 56007, *Pro Se* Petitioner;

Ana H. Voss, Esq. and Ann M. Bildtsen, Esq., Assistant U.S. Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota, 55415, for Respondents

---

## INTRODUCTION[1]

Petitioner Wilson Nduri Tindi ("Tindi") has been detained by United States Immigration and Customs Enforcement ("ICE") for some 15 months pending removal to Kenya. Despite the issuance of the requisite travel document, Tindi asserts his detention is indefinite and unreasonable, and therefore seeks a Writ of Habeas Corpus

---

[1] This matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

securing his immediate release.  For the reasons outlined below, it is recommended that the Petition be granted.

## FINDINGS OF FACT

### 1. Tindi's Initial Immigration Proceedings

Tindi is a native and citizen of Kenya who entered the United States on November 25, 2005 under a B2 Visitor Visa that allowed him to remain here for six months, but Tindi remained in the United States beyond that date without authorization. Lee Decl., Ex. 1 p. 7, Docket No. 13.  Though he applied to become a permanent resident, Tindi's application was rejected on September 1, 2007.  *Id.*  On November 14, 2008 ICE initiated removal proceedings against Tindi, which culminated in a March 10, 2009 order for removal.  *Id.*  Tindi was taken into custody in October 2009.  *Id.* p. 8.  He then filed a successful motion to reopen his immigration proceedings, which prompted his release from custody on November 17, 2009.  *Id.* p. 46.  Tindi remained out on bond under threat of removal for the next two years while his immigration status was under consideration.  Lee Decl. ¶¶ 9-10, Docket No. 13.  On September 21, 2011, an immigration judge reversed the previous removal order, and on April 15, 2014 Tindi's status was changed to lawful permanent resident.  *Id.* ¶¶ 10-11.

### *2.* Tindi's Criminal Conviction And Resulting Removal Proceedings

In December 2014, Tindi was charged with first degree burglary and fourth degree sexual assault for entering his neighbor's apartment without permission and attempting to sexually assault a woman who was asleep there.  Lee Decl., Ex. 1 pp. 16-18, Docket No. 13.  Tindi pleaded guilty to the assault; the burglary charge was dismissed as part of his plea agreement.  *Id.* p. 20.  Tindi was sentenced to 24 months,

2

the execution of which was stayed for five years, and he was ordered to serve 210 days in the Hennepin County Adult Corrections Facility, which he began serving on April 4, 2016. *Id.* pp. 10, 12, 14.

ICE took Tindi into custody directly from the Hennepin County Jail on August 16, 2016. Lee Decl. ¶ 13, Docket No. 13. Pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), on December 9, 2016, an immigration judge ordered Tindi's removal to Kenya, which Order was affirmed by the Board of Immigration Appeals ("BIA") on April 27, 2017. Lee Decl., Ex. 1 pp. 23-30, 36-40, Docket No. 13. A final warrant of removal was issued on May 4, 2017. Lee Decl. ¶ 17, Docket No. 13. On July 27, 2017, Tindi was informed he would remain in ICE detention beyond the 90-day removal period because he appeared to be a threat to the community and that there was a significant likelihood of removal in the reasonable foreseeable future. *Id.* ¶ 21. On September 19, 2017 ICE received a travel document for Tindi from the Kenyan Embassy. *Id.* ¶ 22.

### 3. Tindi's Appeals

Four days after Tindi's final warrant of removal was issued, on May 8, 2017, Tindi appealed his state criminal conviction, arguing his counsel failed to inform him that pleading guilty would result in his deportation. *Wilson Nduri Tindi v. State of Minnesota*, No. A17-0724. This appeal was argued October 26, 2017.

On May 16, 2017 Tindi also filed a Petition for Review of his final removal order to the Eighth Circuit. *Tindi v. Jeff B. Sessions, et al.,* No. 17-2086 (8th Cir. 2017). The Eighth Circuit stayed Tindi's removal pending resolution of his Petition for Review, which appeal was then stayed in its entirety pending the United States Supreme Court's decision in *Sessions v. Dimaya*, which was argued on October 2, 2017. *Tindi v. Jeff B.*

3

*Sessions, et al.*, No. 17-2086 (Order Jun. 1, 2017).  The issue before the Supreme Court in *Dimaya* is whether the definition of "a crime of violence" in 18 U.S.C. § 16(b), as incorporated into the removal statute at issue in this case, 8 U.S.C. § 1227(a)(2)(A)(iii), is unconstitutionally vague.  *Sessions v. Dimaya*, No. 15-1498 (Argued Oct. 2, 2017).

### 4. The Habeas Proceeding

Tindi filed this Petition for a Writ of Habeas Corpus on August 7, 2017, arguing he should be released pending removal because he is not a threat to the community, that ICE is forbidden from holding him indefinitely, and that his release is not reasonably foreseeable.  Pet'r. Mem., Docket No. 2.  The Government filed their response on September 25, 2017, Gov't. Resp., Docket No. 12, to which Tindi replied on October 19, 2017.  Pet'r. Reply, Docket No. 15.

## CONCLUSIONS OF LAW

### 1. Statutory Basis For Detention

8 U.S.C. §1226(c) mandates detention during removal proceedings for certain aliens who have committed specified crimes.  8 U.S.C. § 1226(c).  Unlike non-criminal aliens, individuals detained pursuant to 8 U.S.C. § 1226(c) may not be released, except in narrow circumstances that are inapplicable here.  *See* 8 U.S.C. § 1226(c)(2).  While an individual detained under this section may ask an Immigration Judge to reconsider whether the mandatory detention provision applies to him, *see* 8 C.F.R. § 1003.19(h)(2)(ii), such review is limited to whether the person is properly included in the category for mandatory detention based on criminal history.  *Rodriguez v. Robbins*, 804 F.3d 1060, 1078 (9th Cir. 2015).  The Immigration Judge's decision may be

appealed to the Board of Immigration Appeals, and from there directly to the appropriate circuit court of appeals. 8 C.F.R. § 1003.38(a). This Court does not have jurisdiction to decide whether Tindi is properly detained under 8 U.S.C. § 1226(c).

Once removal proceedings have been completed, ICE has separate authority to detain individuals to ensure they are removed. Under 8 U.S.C. § 1231(a)(2), the Attorney General *shall* detain an alien during the 90-day removal period following a final order of removal and *may* thereafter continue to detain an individual removable under § 1227(a)(2) if the Attorney General determines the alien is a risk to the community. 8 U.S.C. § 1231(a)(6).

### 2. Judicial Review of Immigration Detention

The Supreme Court has determined that the length of an alien's detention – both before and after a final order of removal has issued – is subject to habeas corpus review by federal courts.[2]  *See Demore v. Kim,* 538 U.S. 510, 517 (2003)(pre-removal detention); *Zadvydas v. Davis,* 533 U.S. 678, 699 (2001)(post-removal detention).

Tindi's case resides in that nebulous intersection of pre-removal detention under 8 U.S.C. § 1226 and *Demore,* and post-removal detention under § 1231 and *Zadvydas,* which intersection has been carefully described, analyzed and applied in *Bah v. Cangemi*, 489 F. Supp. 2d 905 (D. Minn. 2007) and *Davies v. Tritten*, No. 017CV03710SRNSER, 2017 WL 4277145 (D. Minn. Sept. 25, 2017). The particular facts and procedural history of Tindi's case, however, distinguish it from both *Bah* and *Davies.* Accordingly, a brief review of this intersection and of those opinions is in order.

---

[2]   The scope of habeas corpus jurisdiction in this area, however, is unclear. *Davis v. Tritten*, No. 017CV03710SRNSER at *2 (D. Minn. Sept. 25, 2017).

5

### 3.     Post Removal Detention (8 U.S.C. § 1231)

8 U.S.C. § 1231, which governs detention of persons subject to a final order of removal, provides that such persons shall be detained for the 90-day removal period following issuance of the final removal order, and may be detained beyond the 90-day period as necessary. 8 U.S.C. § 1231(a)(6). However, the Government's power to detain even those persons who have been convicted of crimes is not without limitation. In *Zadvydas v. Davis*, 533 U.S. 678, 689-90, 699 (2001), the United States Supreme Court held that post-removal detention up to six months is presumptively reasonable and does not violate the detainee's Fifth Amendment right to due process. *Id.* at 690, 693-94, 701. Detention longer than six months is not presumptively reasonable, but nonetheless comports with due process if there is a "significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Absent such evidence, the detainee must be released. *Bah*, 489 F. Supp. 2d at 922-23.

For a brief period, Tindi was subject to a final order of removal. Tindi's order of removal became final upon the rejection of his administrative appeal on April 27, 2017. He remained in final removal status until June 1, 2017, when the Eighth Circuit stayed the removal order. *See Bah*, 489 F. Supp. 2d at 918. Shortly thereafter on June 23, 2017, the Eighth Circuit also stayed Tindi's entire PFR proceeding pending a decision by the United States Supreme Court in *Dimaya.*

In *Bah v. Cangemi*, 489 F. Supp. 2d 905 (D. Minn. 2007), this Court considered how *Zadvydas* is applied to someone, like Tindi, who has been subject to a final removal order but has later been granted a stay of that order. In *Bah*, the petitioner awaited deportation for over two years, but had not been released under *Zadvydas* because he had repeatedly shifted between pre- and final-removal status. *Id.* at 917. The court identified two separate analytical approaches to answering the question how *Zadvydas* applies to the time an alien had been detained while shifting in and out of final removal status. Under the first approach – retrospective recharacterization – the issuance of a stay order such as Tindi's causes all "time served" to be retrospectively recharacterized as pre-removal detention, thereby resulting in a resetting of the *Zadvydas* clock. In the "unencumbered time" approach, the court aggregates all time during which the alien was in removal and post-removal status, and could have lawfully been removed. In *Bah*, this Court adopted the unencumbered time approach as the proper one and, applying it to Bah, found his detention exceeded the six-month period that is presumptively reasonable under *Zadvydas*. Since *Bah* had demonstrated there was no significant likelihood of removal in the reasonably foreseeable future, *Zadvydas* compelled Bah's immediate release.

Tindi's case is different. Under the unencumbered time approach, Tindi has only served - at most – 35 days on the *Zadvydas* clock and his removal detention time is within the presumptively reasonable six-month limitation. Because Tindi is in custody but not currently subject to a final removal order, "his [on-going] detention … is not governed by *Zadvydas*." *Davies v. Tritten,* No. 017CV03710SRNSER, 2017 WL 4277145, at *3 (D. Minn. Sept. 25, 2017). Thus, *Zadvydas* does not compel Tindi's

7

release here. *Bah*, 489 F. Supp. 2d at 922. Instead, the Court must evaluate Tindi's request for release under 8 U.S.C. § 1226(a) and the law governing pre-removal detention under that statute. *Davies v. Tritten*, No. 017CV03710SRNSER, 2017 WL 4277145, at *2-4 (D. Minn. Sept. 25, 2017)

### 4. Pre-Removal Detention (8 U.S.C. § 1226)

An "alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). During the period before a final order of removal is issued, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Demore, 538 U.S. at 527-28, 558–59. Tindi has been in pre-removal detention for at least 14 months.[3] Because Tindi is not currently being detained subject to an actionable final removal order, the constitutionality of his detention is governed by *Demore*. *Davies v. Tritten*, No. 017CV03710SRNSER, 2017 WL 4277145, at *3 (D. Minn. Sept. 25, 2017).

All courts that have addressed the issue of pre-removal detention have read *Demore* to impose a reasonableness requirement on the constitutionally permissible period of pre-removal detention. *Id.* The majority of circuits that have addressed the issue have adopted a fact-dependent reasonableness standard. *See Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016); *Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1215 (11th Cir. 2016); *Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 269 (3d Cir. 2012); *Diop*

---

[3] The calculation of Tindi's pre-removal detention time depends upon which of the two tests identified in *Bah* applies to his detention time. Under the unencumbered time approach, the month of unencumbered time Tindi spent in final removal status is subtracted from Tindi's total detention time of 15 months. *See, Bah*, 489 F. Supp. 2d at 921-22.

8

*v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263, 271 (6th Cir. 2003). The Second and Ninth Circuits, however, have adopted a bright-line rule, requiring a specific finding of flight risk or danger to the community to justify pre-removal detention exceeding six months. *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015); *Rodriguez v. Robbins*, 715 F.3d 1127, 1138 (9th Cir. 2013).

The Eighth Circuit has not addressed which test – the majority "fact-based" reasonableness test or the minority "bright-line" rule approach – applies to determine the constitutionality of a detainee's pre-removal detention. Likewise, this Court has not explicitly adopted either test. The most recent decision to have addressed the issue declined to expressly adopt one test or the other, but found, applying the fact-based reasonableness test, that the alien's detention was reasonable and therefore constitutional. *See Davies v. Tritten*, No. 017CV03710SRNSER, 2017 WL 4277145, at *3 (D. Minn. Sept. 25, 2017).

Mindful of the absence of clear precedent on this issue, this Court proceeds with caution. But, because the issue is squarely raised here, the Court must resolve it even in the absence of definitive guidance. Courts have been clear that as the period of detention grows longer, the heavier is the government burden to justify continued detention. *Davies v. Tritten*, No. 017CV03710SRNSER, 2017 WL 4277145, at *4 (D. Minn. Sept. 25, 2017); *see also Reid v. Donelan*, 991 F. Supp. 2d 275, 281 (D. Mass. 2014), *aff'd,* 819 F.3d 486 (1st Cir. 2016) (A 14-month detention is "well beyond the brief detainment contemplated in *Demore*."); *Ly*, 351 F.3d at 270 ("[W]e affirm … that incarceration for 18 months pending removal proceedings is unreasonable.").

This Court will apply a fact-based individualized determination of reasonableness as that approach is not only followed by a majority of circuits, it is also the approach most consonant with prior decisions of this Court.[4]  Adopting such an approach in this case leads the Court to conclude that Tindi's continued detention is unreasonable and no longer "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings."  *Demore*, 538 U.S. at 528.  Though Tindi initially overstayed his 2005 Visa, he has, since that time, exclusively utilized the courts to challenge his removal.  Through rulings both favorable and unfavorable, Tindi has relied upon the legal process and has shown no indication that he is a flight risk or that he would refuse to comply with a final order of removal should his legal challenges fail.  In fact, for a period of almost two years, while Tindi was subject to his initial removal order, Tindi was not in ICE custody (pending what turned out to be a favorable ruling granting him permanent resident status).  There is no evidence in the record that Tindi attempted to flee or in any way was a flight risk even though he was in much the same situation as he is here – that is, living under an otherwise final removal order that he was challenging through legal proceedings.  While it is possible, had that order not been reversed, Tindi would have fled upon issuance of an adverse decision, there is simply no evidence to establish that supposition.  Tindi's current availment of legal process in this matter similarly suggests he is not a flight risk.

Tindi has been in ICE custody for over 15 months, with an indefinite period yet to remain.  Tindi's Eighth Circuit matter is stayed pending a decision in *Dimaya,* in which the Supreme Court will decide whether the definition of a "crime of violence" in

---

[4]   *See, Moallin v. Cangemi*, 427 F. Supp. 2d 908, 925 (D. Minn. 2006); *Davies v. Tritten*, No. 017CV03710SRNSER, 2017 WL 4277145 (D. Minn. Sept. 25, 2017).

18 U.S.C. § 16(b), as incorporated into the Immigration and Nationality Act provisions governing removal eligibility, is unconstitutionally vague. Because Tindi's removal is directly predicated on the finding that his sexual assault conviction is a crime of violence, a decision striking down 18 U.S.C. § 16(b) could lead to reversal of Tindi's removal order; at a minimum it would lead to further, possibly protracted litigation. It is unknown when the Supreme Court will decide *Dimaya,* and this Court cannot prognosticate what its decision will be or how, if at all, it will affect Tindi's removal. In addition, though seemingly less uncertain than predicting the timing of and holding in *Dimaya*, this Court cannot prognosticate when and how Tindi's state court appeal will be decided and, if unsuccessful, whether the Minnesota Supreme Court will grant review. Tindi's removal is thus uncertain, and the period of his continued detention is indefinite. Thus, despite the Government's diligence and the fact that a travel document has been issued, it cannot be said that Tindi's removal will occur in the reasonably foreseeable future.

The Government suggests that Tindi should not be released because it has diligently worked toward removing Tindi, who would have already been deported had he not filed multiple appeals. Gov't. Resp. pp. 17-18, Docket No. 12. This is true, but misses the mark. While the Government is not at fault for Tindi's delayed repatriation, "appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly,* 351 F.3d at 272. There is no evidence Tindi's appeals were pursued in bad

faith or were a dilatory strategy to prolong his deportation proceedings. Tindi may not be detained indefinitely merely because he has pursued his legal rights.

The Government also suggests Tindi's detention should continue because, had Tindi's criminal sentence not been stayed, he would in fact still be in criminal custody. Gov't. Resp. p. 18. This argument appears to be premised on a factor applied by the First Circuit in formulating its reasonableness test – that is, that Tindi's period of detention to date is shorter than the sentence he received in his underlying criminal case. While it is true that Tindi's criminal sentence of two years exceeds the 15 months he has been in ICE custody, that is not, in this Court's view, the proper inquiry. Tindi's criminal sentence *was stayed*, and the Government has offered no evidence that the stay was predicated on Tindi's imminent deportation, or that Tindi has violated the conditions of his stay. Given the actual state of affairs, but for ICE's detention, Tindi would *not* be in custody today. Accordingly, the Government may not continue to incarcerate Tindi on those grounds.

In short, balancing the factors that are individual to Tindi's case leads this Court to conclude that his continued detention is not reasonable and does not comport with due process. The decision to recommend releasing Tindi does not come without hesitation. While Tindi's continued detention is unreasonable, it is reasonable to impose conditions on his release to protect the public and to reasonably assure his presence should his final removal be reinstated. As this Court noted in *Bah*, "Congress has the right 'to remove aliens, to subject them to supervision with conditions when released from detention, [and] to incarcerate them where appropriate for violations of those conditions.' 533 U.S. at 695, Section 241.13(h) of Title 8 of the Code of Federal

Regulations provides for subjecting aliens who are released from custody under *Zadvydas* to appropriate release conditions." *Bah*, 489 F. Supp. 2d at 923. The Court will therefore recommend the government impose, through an order of supervision, such release conditions as prescribed by 8 C.F.R. § 241.13(h) as it deems necessary and appropriate.

## RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT Tindi's Petition for a Writ of Habeas Corpus (Docket No. 1) be GRANTED as follows:

1. That on or before January 2, 2018, ICE release Tindi from custody on such terms and conditions as it deems necessary to protect the community and ensure Tindi's appearance; and

2. In the event ICE does not release Tindi on or before January 2, 2018, that a Writ of Habeas Corpus issue immediately compelling his unconditional release.

Dated:     December 8, 2017

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).